UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kevin Daniels,<br><br>    Plaintiff,<br><br>  –v–<br><br>City of New York et al.,<br><br>    Defendants. | 16-cv-9080 (AJN)<br><br>MEMORANDUM<br>OPINION AND ORDER |

ALISON J. NATHAN, District Judge:

In this civil rights action, Plaintiff Kevin Daniels argues that he was injured during a collision with a police vehicle and that he suffered a deprivation of his constitutional rights, as well as violations of his state rights, as a result. Currently before the Court is the Defendants' motion for partial summary judgment. For the reasons explained below, the motion is granted in part and denied in part.

I. **Background**

On July 14, 2016 at approximately 7:45 p.m., Plaintiff Kevin Daniels was driving a motorbike southbound on East 56th Street toward Linden Boulevard in Brooklyn, New York. D. Statements of Undisputed Facts ("D. 56.1"), Dkt. No. 60, ¶¶ 1-2; Pl. Counter-Statements and Statement of Undisputed Facts ("Pl. 56.1"), Dkt. No. 75, Responses 1-2. At the same time, Defendant Officer Saul Delacruz was driving a police vehicle eastbound on Linden Boulevard toward East 56th Street. D. 56.1 ¶ 10; Pl. 56.1 Response 10. Another police officer, Jesus Munet, was riding in the passenger seat of the police vehicle. *See* D. 56.1. ¶ 10; Pl. 56.1 Response 10. At the intersection of Linden Boulevard and East 56th Street, "an incident

1

occurred"[1] involving the Plaintiff's motorbike and the police vehicle that resulted in the Plaintiff sustaining injuries. D. 56.1 ¶ 1; Pl. 56.1 Response 1.

At some point either immediately before or after the "incident," Officer Delacruz determined that the motorbike driven by the Plaintiff was not street legal based on his observations that the motorbike had no mirrors, no headlights, and tires that were not legal for street driving. D. 56.1 ¶¶ 6, 11; Pl. 56.1 Response 6; *see also* Pl. 56.1 Response 11 (denying that Officer Delacruz determined *after* the incident that the Plaintiff's motorbike was not street legal because "[f]rom the lack of a headlight De La Cruz should have and was able to easily tell this was an off road bike before he struck the plaintiff"). Following the incident, the Plaintiff "got up from off the ground and . . . walked over towards the police car and . . . asked why did they hit me." Pl. 56.1 Response 13; Daniels Deposition Tr., Dkt. No. 98-1, 116:4-5; *see also* D. 56.1 ¶ 13. Officer Delacruz testified that he perceived the Plaintiff as moving to leave the scene of the accident, D. 56.1 ¶ 12; Delacruz Deposition Tr., Dkt. No. 98-2, at 25:14-18 ("I put handcuffs on him because, after the accident took place, he got back . . . up from the floor, told me some bad words and went to grab the bike."), although the Plaintiff disputes that his motions were consistent with such a motive, Pl. 56.1 Response 12; Oliviere Deposition Tr., Dkt. No. 73-6, at 97:25-98:5 (stating that he did not see the Plaintiff pick up the bike because the Plaintiff "couldn't even move. . . . [H]is leg was hurt"). The Defendants then placed the Plaintiff in handcuffs and into the police vehicle. D. 56.1 ¶ 16; Daniels Deposition Tr. at 117:20-22; Delacruz Deposition Tr. at 25:10-18. At that time, they also searched the Plaintiff and found marijuana in his pocket. D. 56.1 ¶¶ 17-18; Pl. 56.1 Responses 17-18.

---

[1] The parties agree that a genuine dispute of material fact remains as to how the incident occurred. *See* D. Memo. in Support of SJ ("Support"), Dkt. No. 61, at 3 n.2.

Defendant Delacruz placed the Plaintiff in the back of his police vehicle, which was not air conditioned. Pl. 56.1 ¶ 2; D. Responses to Pl. 56.1 ("D. Responses"), Dkt. No. 79, ¶ 2. July 14 was a hot and humid day. Pl. 56.1 ¶ 1; Oliviere Deposition Tr. 98:8-16; D. Responses ¶ 1. The parties dispute how long Daniels remained in the back of the police vehicle until an ambulance was called, as well as the time at which the ambulance arrived. *Compare* Pl. 56.1 ¶¶ 3-5 (stating that an ambulance was not called until 8:15 p.m. and did not arrive until 8:40 p.m.), *and* Delacruz Deposition Tr. 103:4-13 (estimating Delacruz waited 10 to 15 minutes to call an ambulance), *with* D. Responses ¶¶ 3-5 (stating that the ambulance was called at 8:01 p.m., arrived at 8:05 p.m., and left for the hospital at 8:47 p.m.), *and* FDNY Prehospital Care Report, Dkt. No. 80-1 (stating that the ambulance was called at 8:01 p.m., arrived at 8:05 p.m., first made contact with the Plaintiff at 8:27 p.m., and left for the hospital at 8:47 p.m.). While waiting for the ambulance, the Plaintiff complained repeatedly that he was in severe pain from his foot or leg. Pl. 56.1 ¶¶ 7-8; Oliviere Deposition Tr. 69:19-24, 73:1-12; D. Responses ¶¶ 7-8. In addition, he complained that it was hot in the back of the vehicle through the cracked window. Pl. 56.1 ¶¶ 9-11; Oliviere Deposition Tr. 73: 3-4; D. Responses ¶¶ 9-11.

After the "incident," the Plaintiff was transported by ambulance to the Kings County Hospital Center. D. 56.1 ¶ 19; Pl. 56.1 Response 19. His injuries included abrasions and a fracture of the second and third metatarsal bones in his left foot. D. 56.1 ¶ 20; Pl. 56.1 Response 20. As a result of the "incident," Plaintiff received four summonses: a criminal summons for unlawful possession of marijuana, and traffic summonses for operating a motorbike without a license, disobeying a steady red light, and having an unregistered motorbike. D. 56.1 ¶¶ 21-25; Pl. 56.1 Responses 21-25. Plaintiff did not appear in court to contest his summons for failure to obey a steady red light. D. 56.1 ¶¶ 26-27; Pl. 56.1 Responses 26-27.

On November 23, 2016, the Plaintiff initiated this action in the Southern District of New York by filing a claim against Defendants City of New York, Officer Delacruz, and Officer Munet. Complaint, Dkt. No. 1. Following the completion of discovery, the Defendants moved for partial summary judgment. Mot. for SJ, Dkt. No. 59. That motion is the subject of this Memorandum and Order.

**II.     Legal Standard**

Summary judgment is appropriate when, after reviewing the parties' submissions in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant "demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with *specific evidence* demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that

4

its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## III. Discussion

The Defendants argue that they are entitled to summary judgment on Plaintiff's unreasonable seizure claim and his negligence claim. For the reasons that follow, the Court concludes that the Defendants are entitled to summary judgment on Plaintiff's unreasonable seizure claim but that summary judgment should not be granted as to Plaintiff's negligence claim.

### A. Defendants Are Entitled to Qualified Immunity on Plaintiff's Unreasonable Seizure Claim

The Plaintiff's fourth cause of action is a claim that he was subjected to an unreasonable seizure under the Fourth Amendment based on the conditions in which he was detained. Because it was not clearly established by binding precedent that it was unconstitutional for the Defendant officers to confine the Plaintiff in the conditions he describes, the Defendants are entitled to qualified immunity on this claim.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stanton v. Sims*, 134 S. Ct. 3, 5-6 (2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). It "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal]

right[.]' . . . The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014) (first, second, third, and fourth alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate" such that "every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The dispositive question" when determining whether a right is clearly established "is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* (alteration in original) (quoting *Saucier*, 533 U.S. at 205).

The Court concludes that the Defendants are entitled to qualified immunity on the Plaintiff's unreasonable seizure claim because no precedent clearly established that the conditions in which the Plaintiff was confined violated his constitutional rights. In his complaint and the evidence he provides to the Court, the Plaintiff argues that he was subjected to unreasonable seizure by the Defendants when they handcuffed him and placed him in the back of a police cruiser "with the window only cracked" and while Daniels complained that his leg was in severe pain. P. Opp. at 2. However, the Plaintiff identifies no precedent that is sufficiently

6

similar to the facts of this case, as required by *Mullenix* and a long line of Supreme Court precedent, to establish that it was constitutionally impermissible to detain the Plaintiff in a police cruiser in which some windows were at least partially open and wait some amount of time up to one hour before providing the Plaintiff with medical attention for injuries that did not appear to be life threatening.[2]

The Plaintiff generally asserts that "being locked in the back of a severely hot [police vehicle], while bleeding, sweating, in handcuffs, with the windows rolled mostly up, denied the abused plaintiff in this matter 'a civilized measure of life's necessities.'" P. Opp. at 10 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1970)). However, such a generalized statement is insufficient to clearly establish that the officers' conduct in this case violated the Plaintiff's constitutional rights. *See Mullenix*, 136 S. Ct. at 308. The only case discussed by the Plaintiff that is at all similar to this case is *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). *See* Opp. at 7-9. That case, however, still bears little resemblance to the present case – in *Darnell*, the Second Circuit considered whether nine conditions of confinement at Brooklyn Central Booking, including "extreme temperatures and poor ventilation," constituted a violation of the Fourteenth Amendment for inmates detained there. 849 F.3d at 23-26. The Second Circuit reversed the district court's grant of summary judgment on the merits of the plaintiffs' claims, concluding that the district court had applied the incorrect *mens rea* requirement in considering those claims. *See id.* at 39. The Second Circuit did not conclude that any one of the conditions taken alone would constitute a violation of clearly established law, and it remanded the issue of qualified immunity

---

[2] While there remains a dispute regarding the incident between the police cruiser and the Plaintiff's street bike, the Plaintiff has neither alleged nor adduced facts suggesting that his injuries were life threatening, or that they would have appeared life threatening to the officers. Rather, the Plaintiff has testified that he was "complaining about his leg" and that he "was in great pain which he describes as a '10', and it was 'severe.'" Pl. 56.1 ¶¶ 7-8. While such severe pain may certainly be concerning, the Plaintiff has not suggested that he faced a medical emergency requiring immediate attention.

for the district court to consider in the first instance, stating "we do no decide how [qualified immunity] should be decided using the proper standards." *Id.* As a result, the Court concludes that *Darnell* does not illustrate that it was clearly established at the time of the "incident" in this case that an individual could not be held in the back of a police vehicle on a hot day with some windows partially open, nor does it establish that officers could not wait for some period of time lasting no more than one hour before giving an arrested person non-emergency medical treatment.

The Plaintiff also tries to demonstrate that the law was clearly established by reference to New York Agriculture and Markets Law section 353-d, which makes it a fineable offense to "confine a companion animal in a motor vehicle in extreme heat or cold without proper ventilation or other protection from such extreme temperatures where such confinement places the companion animal in imminent danger of death or serious physical injury." Opp. at 11-12 (quoting N.Y. Agric. & Mkts. Law § 353-d(1)). The Plaintiff states that he, "at a bare minimum, is entitled to the same level of protection as the family dog." Opp. at 12. However, the Court concludes that an agricultural statute dealing with companion animals is so utterly unrelated to the Defendant officers' duties and behavior in this case that it would not put a reasonable officer on notice that detaining the Plaintiff in the police cruiser would violate his constitutional rights. Moreover, section 353-d(1) only applies when a companion animal is in "imminent danger of death or serious physical injury," and the Plaintiff has provided no evidence in this case to suggest that he was in imminent danger while in the back of the police cruiser. *See, e.g.*, Pl. 56.1 ¶ 10 (describing the Plaintiff as sitting in the back of the police car "sweating" but describing no other physical symptoms caused by the heat). At the very least, a reasonable officer in the Defendant officers' position could have concluded that the Plaintiff was not in imminent danger

because at least one of the police cruiser's windows was ajar and the Defendants had just been driving around in the same cruiser without air conditioning in the same temperatures. *See* Pl. 56.1 ¶ 2.

The Plaintiff's argument that the Defendant officers could have been found criminally negligent if they had locked a child in their police vehicle instead of an adult, Opp. at 12-13, similarly fails. In support of this argument, the Plaintiff cites New York Penal Law § 15.05(3), which provides a general definition of the term "recklessly," and *People v. Baker*, 771 N.Y.S.2d 607 (App. Div. 2004), a case in which a babysitter's conviction was reduced from murder to criminally negligent homicide after she left a toddler in her locked bedroom for hours while the furnace ran, despite the whole house feeling hot "like an oven or a sauna," *id.* at 609. However, for reasons similar to those discussed above, *Baker* is sufficiently dissimilar from the facts of this case that it did not put all reasonable officers on notice that it would be a constitutional violation to detain an arrestee in a police vehicle that had one or more windows partially rolled down for some amount of time not lasting more than an hour.

For the reasons explained above, the Court concludes that the Defendants are entitled to qualified immunity on the Plaintiff's unreasonable seizure claim. Summary judgment is thus granted as to that cause of action.

### B. Plaintiff's Negligence Claim Survives Summary Judgment

In his complaint, the Plaintiff alleges as his fifth cause of action that the Defendants acted negligently in the operation of the police vehicle when it hit the Plaintiff. Complaint ¶¶ 61-64. The Defendants move for summary judgment, arguing that the Plaintiff alleges only facts demonstrating that the Defendants acted intentionally, and thus cannot rely on those same facts

9

to support a claim of negligence. Support at 8. Because the Defendants' assertion is legally incorrect, summary judgment is denied.

It is well settled that a plaintiff may plead excessive force and negligence in the alternative. *See Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67, 88 n.14 (E.D.N.Y. 2012) ("[B]ecause in this case a jury could reasonably conclude that any alleged contact by moving the door was either intentional or inadvertent, both claims survive summary judgment."); *see also Ziming Shen v. City of New York*, 725 F. App'x 7, 16 (2d Cir. 2018) (stating that it is "possible as a legal theory" to argue intentional assault and negligence in the alternative but concluding it was improper because both parties agreed that the defendant intentionally made physical contact with the plaintiff). "Though litigants may allege alternate, or inconsistent, claims in a pleading, when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed." *Bah v. City of New York*, No. 13-cv-6690 (PKC), 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014). For example, in *Dava v. City of New York*, a case on which the Defendants rely heavily, the court recognized that "New York law 'bars all negligence claims arising out of allegedly improper procedures during an arrest,'" and, as a result, "to the extent that [the plaintiff's negligence] claim is based on Defendants' alleged intentional acts such as Defendants' arrest of Plaintiff, the claim is not cognizable." No. 15-cv-8575 (ALC), 2016 WL 4532203, at *12 (S.D.N.Y. Aug. 29, 2016). The purpose of disallowing such pleadings is to prevent plaintiffs from "transmogrify[ing] intentional torts into 'negligence.'" *Schmidt v. Bishop*, 779 F. Supp. 321, 324-25 (S.D.N.Y. 1991).

The Court concludes that in this case, the Plaintiff's negligence claim survives summary judgment. Unlike *Ziming Shen*, it does not appear that the Defendants agree with the Plaintiff's characterization that Officer Delacruz intentionally hit the Plaintiff with his car. Indeed, the

10

Defendant's statement of undisputed facts contains nothing regarding Defendant Delacruz's intention or state of mind at the time of the "incident," and the parties acknowledge a continuing dispute about how it occurred. Thus, the Defendants' mental state at the time of the collision remains in dispute. Moreover, unlike the alleged conduct in *Dava*, it is a permissible state-law tort in New York to argue that a defendant negligently ran a red light and struck a plaintiff. This is thus not an attempt to "transmogrify" intentional conduct into negligence. *See Schmidt*, 779 F. Supp. at 325. Because the Plaintiff and his witnesses can only guess at the Defendants' state of mind, *see* Oliviere Deposition Tr. at 57:11-25 (explaining why witness believes the Defendants may have acted intentionally based on their driving speed), it is appropriate to leave the decision to the jury to determine whether the Defendants acted intentionally, negligently, or reasonably.

For the foregoing reasons, the motion for summary judgment is denied as to the Plaintiff's negligence claim.

### IV. Conclusion

The Defendants' motion for summary judgment is granted with respect to Plaintiff's unreasonable seizure claim and denied as to Plaintiff's negligence claim. This resolves docket number 59. A scheduling conference in this matter will be set under separate order.

In light of this Memorandum Opinion and Order, it appears that some of the parties' motions in limine may be moot. As a result, the Court will deny the parties' motions in limine <u>for administrative purposes only</u>. The parties shall refile only motions in limine that are relevant to the Plaintiff's remaining claims. These motions in limine shall be filed within two weeks of the date of this Memorandum Opinion and Order. Responses to motions in limine will be due two weeks after the motions in limine are filed. This resolves docket numbers 57 and 58.

SO ORDERED.

Dated: September 27, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge