UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Kevin Daniels,

            Plaintiff,

—v—

The City Of New York et al.,

            Defendants.



16-cv-9080 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff in this case moved to preclude the testimony of Defendants' expert, Dr. Ali Sadegh, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See* Dkt. No. 82. For the reasons articulated below, Plaintiff's motion is granted in part and denied in part.

**I.    Background**

The Court assumes familiarity with the facts of this case, which were the subject of an earlier Memorandum Opinion & Order granting in part and denying in part Defendants' motion for partial summary judgment. Dkt. No. 99.

Defendants have procured Dr. Sadegh as an expert to determine how Plaintiff suffered his injuries. *See* Dkt. No. 93, Def. Br. at 4. It is Dr. Sadegh's testimony that Plaintiff now challenges under Rule 702 and *Daubert*.

**II.    Legal Standard**

The party seeking to introduce expert testimony "bears the burden of establishing its admissibility by a preponderance of the evidence." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003). Federal Rule of Evidence 702 allows expert testimony if:

1

(a) the expert's...specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In evaluating expert testimony under this standard, the court acts as a gatekeeper to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597.

The reliability inquiry envisioned by *Daubert* is "a flexible one," *id.* at 594, and the factors to be considered "depend[ ] upon the particular circumstances of the particular case at issue." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999). The Second Circuit has emphasized that courts should focus on "the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702). This "flexible *Daubert* inquiry gives the...court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony." *Id.* at 267.

Even in light of *Daubert* and its progeny, "exclusion [of expert testimony] remains 'the exception rather than the rule.'" *Vazquez v. City of New York,* No. 10-CV-6277 (JMF), 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014) (quoting *Floyd v. City of New York,* 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012)). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

### III. Discussion

2

Dr. Sadegh offers thirteen conclusions and opinions in his report. *See* Dkt. No. 83 Ex. 8, Sadegh R. at 9-10. Dr. Sadegh also offers a "Mechanism of Injuries Analysis," *id.* at 8-9, which Plaintiff contends is another conclusion and opinion. Dkt. No. 83, Pl. Br. at 5. Plaintiff argues that the Mechanism of Injuries Analysis, and Opinions 1-10 and 12-13 fail to satisfy Rule 702 and *Daubert*.[1] The Court will evaluate the conclusions categorically below.

As a preliminary matter, the Court notes that Plaintiff does not explicitly contest Dr. Sadegh's qualifications in accident reconstruction and injury biomechanical analysis. Rather, Plaintiff only argues that Dr. Sadegh is not qualified as a medical expert. *See* Pl. Br. at 1; Pl. Br. at 10-14. Dr. Sadegh has extensive academic experience in the fields of accident reconstruction and injury biomechanical analysis. *See generally* Dkt. No. 94, Friedman Decl. Ex. A. And other courts in this district have found Dr. Sadegh qualified to offer expert testimony in these fields. *See Valez v. O'Brien*, 15-CV-07441 (VEC), Tr. of Oct. 26, 2017 Conf.; *Mulholland v. City of New York*, No. 9-CV-6329 (AKH), 2013 WL 12085087, at *2 (S.D.N.Y. Aug. 27, 2013), *aff'd*, 565 F. App'x 35 (2d Cir. 2014). While Plaintiff points to several cases where Dr. Sadegh was precluded as an expert, they are not persuasive, as they do not relate to Dr. Sadegh's qualifications as an expert in accident reconstruction and injury biomechanical analysis. *See id.* (precluded from offering medical testimony); *Cerqua v. Stryker Corp.*, 2013 U.S. Dist. LEXIS 58855, at *1 (S.D.N.Y. Apr. 23, 2013) (products liability action alleging injuries caused by a defective hip implant device); *Prendergast v. Hobart Corp.*, No. 04-CV-5134 (SMG), 2010 U.S. Dist. LEXIS 82077, at *7 (E.D.N.Y. Aug. 12, 2010) (products liability case regarding

---

[1] Plaintiff does not contest Opinion 11: "[t]he RMP was inside the intersection box when the Bike was behind the crosswalk meaning the bike not yet [sic] in the intersection." Sadegh R. at 10. Therefore, the Court does not need to address this conclusion.

3

commercial kitchen appliances). The Court concludes that, generally, Dr. Sadegh is qualified as an expert in accident reconstruction and injury biomechanical analysis.

The Court now turns to the specific conclusions that Plaintiff challenges.

### a. Mechanism of Injuries and Opinion 1

First, Plaintiff argues that the Mechanism of Injuries and Opinion 1 conclusions are rebutted by available evidence. Pl. Br. at 6-10. The Mechanism of Injuries is an overall analysis of the accident. *See* Sadegh R. at 8-9. Opinion 1 states:

1. Before driving through the subject intersection, the Bike was traveling above the speed limit of the roadway, i.e. – more than 25 MPH.

*Id* at 9. It is not entirely clear from Plaintiff's brief why these conclusions must be excluded under Rule 702 and *Daubert* if they are rebutted by available evidence. In preparing his report, Dr. Sadegh analyzed: an inspection of the accident site on January 19, 2018; the Police Accident Report; photographs of the accident site on the day of incident; photographs of the motorbike and the NYPD Radio Motor Patrol ("RMP"); photographs of Plaintiff's injuries; Plaintiff's complaint; the NYPD investigation reports; Defendants' discovery productions; the NYPD IAB File; Defendant Delacruz's memo book; the traffic tickets issued to Plaintiff; the deposition transcripts of Plaintiff, Police Officers Delacruz and Munet, and non-party Lexis Dumas; Plaintiff's 50-H transcript; the EMT and ER medical records; Plaintiff's medical records from Kings County Hospital; Plaintiff's expert disclosures from Dr. Marc Hamet and Dr. Luba Karlin; the IAB audio interviews; and a video of the accident scene. *See* Sadegh R. at 1-2. Dr. Sadegh is free to use these materials to arrive at certain conclusions about the accident. It is inevitable that his conclusion will be rebutted by some of this evidence—as Plaintiff and Defendants dispute what occurred in this case. An expert's opinion is rebutted by the opposing party with other evidence all the time. *See, e.g., In re: Gen. Motors LLC Ignition Switch Litig.*,

No. 14-MD-2543 (JMF), 2015 WL 9480448, at *7 (S.D.N.Y. Dec. 29, 2015). It does not mean that the expert's opinion must necessarily be excluded under Rule 702 and *Daubert*. Plaintiff is, of course, free to cross-examine Dr. Sadegh about why he did not rely on certain evidence for his Mechanism of Injuries conclusion—but none of Plaintiff's arguments warrant preclusion of the Mechanism of Injuries or Opinion 1. Plaintiff's arguments "go to the weight, not the admissibility" of the conclusions. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

### b. Opinions 6 and 7

Plaintiff argues that Opinions 6 and 7[2] should be precluded because they are not an "expert's scientific, technical, or other specialized knowledge [that] will help the trier of fact [] understand the evidence or [] determine a fact in issue," as contemplated by Rule 702(a). Pl. Br. at 14. The Second Circuit has explained that "expert testimony must be helpful to the trier of fact in comprehending and deciding issues beyond the understanding of a layperson." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013) (quotation omitted).

Opinions 6 and 7 state:

6. The RMP was visible to Mr. Daniels from at least 70 feet away from the point of contact.
7. Mr. Daniel's field of vision was clear and the RMP was visible to him.

Sadegh R. at 9. Opinion 6 is derived from Dr. Sadegh's calculations that are based on measurements he took at his site inspection, and Plaintiff's testimony of when Plaintiff first viewed the RMP. *See* Sadegh R. at 8; Dkt. No. 95-1 at 8-10. Even if Dr. Sadegh conducted

---

[2] In Plaintiff's brief, Plaintiff refers to these as Opinions 5 and 6. *See* Pl. Br. at 14. However, because Plaintiff references specific language in Opinions 6 and 7, *see id.*, the Court assumes referencing them by name as Opinions 5 and 6 is an error. Plaintiff therefore never makes an argument about the actual Opinion 5. Any arguments for Opinion 5's preclusion would "go to the weight, not the admissibility" of the conclusion. *Boucher*, 73 F.3d at 21; *see also* Section III.a.; Section III.c. The Court therefore concludes Opinion 5 is admissible.

5

minimal mathematical and scientific calculations to conclude that the "RMP was visible to Mr. Daniels from at least 70 feet away from the point of contact," there is no question that these calculations will assist the jury, and are based on a degree of expertise. Plaintiff does not offer a sufficient reason for why Opinion 6 should be precluded under Rule 702 and *Daubert*.

However, it is not clear how Dr. Sadegh arrived at Opinion 7. Nowhere in Dr. Sadegh's report does he explain how he concluded that "Mr. Daniel's field of vision was clear" or that "the RMP was visible to him." Nor do Defendants put forth any argument in their brief justifying this conclusion. Accordingly, Plaintiff's motion as to Opinion 6 is granted.

c. **Opinions 8 and 9**

Plaintiff argues that Dr. Sadegh must be precluded from offering Opinions 8 and 9,[3] as they are premised on the assumption that Plaintiff ran a red light. Pl. Br. at 14-16.

Opinions 8 and 9 state:

8. Mr. Delacruz was unable to stop the RMP and prevent the accident since he was already inside the intersection box.
9. Even if the Bike had a green light, since Mr. Daniels saw the RMP from more than 70 feet away, he should have been able to stop and avoid the accident.

Sadegh R. at 9-10. Whether or not Plaintiff ran a red light remains an issue in this case. In his deposition, Dr. Sadegh was asked "is it fair to say that in performing your analysis you made an assumption that Mr. Daniels ran the red light and not the police officer?" Dkt. No. 83 Ex. 4, Sadegh Dep. at 75-76. He responded, "That's my opinion," and later elaborated, "[b]ased on the evidence and accident reconstruction, I came to the conclusion that he ran the red light. However this is my opinion. I did not have any facts in terms of being there. I wasn't there, so I cannot tell." *Id.* Again, here, Plaintiff does not explicitly explain why Opinions 8 and 9 must be

---

[3] In Plaintiff's brief, Plaintiff refers to these as Opinions 7 and 8. *See* Pl. Br. at 14. However, because Plaintiff references specific language in Opinions 8 and 9, *see id.*, the Court assumes referencing them by name as Opinions 7 and 8 is an error.

6

excluded under Rule 702 and *Daubert*. The Court presumes it is because Plaintiff believes that Dr. Sadegh's conclusion is not "the product of reliable principles and methods," Fed. R. Evid. 702, as Plaintiff states that Dr. Sadegh has "no scientific evidence" for his conclusion about the red light. *See* Pl. Br. at 15.

The Second Circuit has explained that "[w]hile expert testimony should be excluded if it is 'speculative or conjectural,' or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison,' 'other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.'" *BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC*, 623 F. App'x 7, 10 (2d Cir. 2015) (quoting *Boucher*, 73 F.3d at 21). And "[a] district court has discretion under Federal Rule of Evidence 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Boucher*, 73 F.3d at 21.

Here, it is clear that Dr. Sadegh's assumptions were not made in bad faith and are not speculative or conjectural. Dr. Sadegh is not being offered to prove the conclusion that Plaintiff ran a red light. Rather, based on his review of the relevant materials, he assumed that Plaintiff ran a red light, and built that fact into his calculations. Plaintiff's argument that Dr. Sadegh ignored Plaintiff's version of the incident goes to "weight, not the admissibility." *Id.* Plaintiff can address that Opinions 8 and 9 are built on the assumption that Plaintiff ran a red light during cross-examination of Dr. Sadegh.

### d. Opinions 2, 3, 4, and 10

Plaintiff argues that Dr. Sadegh must be precluded from offering Opinions 2, 3, 4, and 10 at trial, as Dr. Sadegh does not have the requisite medical training to offer these opinions. Pl. Br. at 10-14. Defendants argue that Dr. Sadegh is not being offered as a medical expert in this case,

7

rather, these opinions are derived from his expertise in accident reconstruction. *See* Def. Br. at 16. The Court concludes that Dr. Sadegh can testify about Opinions 2, 3, and 4, but not about Opinion 10.

A witness may offer expert testimony if he is "qualified...by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. In his deposition, Dr. Sadegh acknowledged that he has limited medical training, and has no medical knowledge of one of the alleged injuries at issue in this case. Sadegh Dep. at 14-15, 18. In Defendants' brief, they cite to Dr. Sadegh's credentials that would qualify him as an expert in accident reconstruction and injury biomechanical analysis, but do not proffer any evidence as to his medical training. *See* Def. Br. at 7-9. Thus, the Court concludes that under Rule 702 and *Daubert*, Dr. Sadegh would not be able to offer medical expert testimony.

However, medical expert testimony is *not* what is being offered in Opinions 2, 3, and 4. Opinions 2, 3, and 4 state:

> 2. The Bike, prior to contacting the RMP, fell on its left side and then slid towards the RMP.
> 3. Mr. Daniels did not fly over the RMP, rather his body slid on the ground.
> 4. Mr. Daniels' body did not contact the RMP.

Sadegh R. at 9. Opinions 2, 3, and 4 are conclusions based on accident reconstruction and injury biomechanical analysis. While Opinion 3 is premised on Dr. Sadegh's observations of Plaintiff's injuries, Dr. Sadegh is not offering a medical opinion about the injuries. Rather, Dr. Sadegh is offering an analysis of how Plaintiff's motion would have impacted his body. This is squarely within the field of biomechanical analysis: "biomechanical analysis estimates to the extent possible an occupant's movements during an accident—including the forces and accelerations exposed to the occupant's various body parts—and identifies the mechanism for

8

injury, if any." *Boykin v. W. Exp., Inc.*, No. 12-CV-7428 (NSR), 2015 WL 539423, at *1 (S.D.N.Y. Feb. 6, 2015).

Plaintiff's remaining arguments as to these opinions "go to the weight, not the admissibility" of their conclusions. *Boucher*, 73 F.3d at 21. Plaintiff can of course cross-examine Dr. Sadegh about the fact that he did not credit certain eyewitness testimony, or address photographs showing Plaintiff with injuries in other areas of his body besides his left foot. And Plaintiff can argue to the jury that this entitles Dr. Sadegh's expert opinion to less weight. *See Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). However, Opinions 2, 3, and 4 cannot be excluded under Rule 702 and *Daubert*.

Opinion 10 is different. Opinion 10 states:

With a reasonable degree of biomechanics engineering certainty, due to falling off of the bike and the sliding bike, [Plaintiff's] left foot was wedged between the bike and the ground and cause [sic] the fracture of his 2, 3rd metatarsals.

Sadegh R. at 10. In Opinion 10, Dr. Sadegh makes a conclusion that Plaintiff's motion caused an injury. In this case, a specific injury—a break of the 2nd and 3rd metatarsal of Plaintiff's left foot. As Defendants acknowledge, whether or not Plaintiff suffered a break of the 2nd and 3rd metatarsal of his left foot, as opposed to a Lisfranc injury, is an issue in this case. Def. Br. at 15. And Dr. Sadegh is not qualified as an expert to opine on the type of injury, or how the injury was caused—as both are medical in nature. Therefore, Plaintiff's motion as to Opinion 10 is granted. Dr. Sadegh is precluded from testifying about Plaintiff's injuries, or how the injuries were caused.

    e. **Opinions 9, 12, and 13**

9

Additionally, Plaintiff argues that Dr. Sadegh must be precluded from offering Opinions 9, 12, and 13, as they draw legal conclusions. Pl. Br. at 16-18. Opinions 9, 12, and 13 state:

> 9. Even if the Bike had a green light, since Mr. Daniels saw the RMP from more than 70 feet away, he should have been able to stop and avoid the accident.
> 12. Mr. Daniels was not an attentive driver, was not observant to the roadway, and was not driving defensively as required by the Driver Manual of the State of New York.
> 13. With a reasonable degree of engineering certainty, Mr. Daniels was traveling above the speed limit. Moreover, considering his field of vision and his distance from RMP, he should have been able to reduced [sic] his bike's speed and ultimately stop and avoid the accident.

Sadegh R. at 10. Here, Plaintiff's argument is not governed by Rule 702, or *Daubert*, but by Federal Rule of Evidence 704. Under Rule 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue." The Second Circuit, however, has held that "expert testimony that expresses a legal conclusion" must nonetheless be excluded. *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992); *see also Snyder v. Wells Fargo Bank, NA*, 594 Fed. App'x. 710, 714 (2d Cir. 2014) (noting "that while [an] expert 'may opine on an issue of fact within the jury's province,' he 'may not give testimony stating ultimate legal conclusions based on those facts'") (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)). The Second Circuit based this on the Advisory Committee Note to Rule 704, which states that expert "opinions which would merely tell the jury what result to reach" are impermissible. *Hygh*, 961 F.2d at 363 (quoting Fed. R. Evid. 704 advisory committee's note); *see also United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (noting that expert testimony is inadmissible "if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it" (citations and quotation marks omitted)).

Opinions 9, 12, and 13 do not offer legal conclusions. Rather, the opinions provide factual information which give the jury an available inference that Plaintiff was negligent—but it does not direct the jury to a specific legal conclusion. Plaintiff cites to *Hermitage Indus. v.*

10

*Schwerman Trucking Co.*, 814 F. Supp. 484, 487 (D.S.C. 1993) to support his argument. However, in *Hermitage*, the expert in that case used explicit legal terms in his testimony, such as "negligent," and "direct, proximate, and efficient cause." *Id.* Those had a "clear legal meaning" and were meant to "convey to the jury a legal, rather than factual, conclusion" and therefore, the expert's testimony was excluded. *Id.* at 487-88; *see also United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (holding the same). Dr. Sadegh's testimony does not include similar legal conclusions.

Accordingly, Plaintiff's motion as to Opinions 9, 12, and 13 is denied without prejudice to objection at trial should Plaintiff believe that Defendant elicits specific legal conclusions from Dr. Sadegh.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART. This resolves Docket Number 82. Within two weeks of the date of this Order, the parties shall confer regarding settlement and file a status letter with the Court indicating whether they seek a referral to either the Magistrate Judge or the Court-annexed Mediation Program.

SO ORDERED.

Dated: November 13, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge